IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **XIANG HAI,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-1035-KC** |
| | § | |
| **MARKWAYNE MULLIN et al.,** | § | |
| | § | |
| **Respondents.** | § | |

**<u>ORDER</u>**

On this day, the Court considered Xiang Hai's Petition for a Writ of Habeas Corpus

("Petition"), ECF No. 1. Hai is a citizen of China who came to the United States in 2023 on a

B1/B2 visa, which he overstayed. *Id.* ¶ 13. He was taken into immigration custody and was

served with a Notice to Appear on June 29, 2025. *See* Resp. 3, ECF No. 10; *see id.* Ex. B

("Notice to Appear"), ECF No. 10-2. On August 1, 2025, Hai was granted voluntary departure

by an Immigration Judge ("IJ"). Pet. ¶ 13; *see id.* Ex. 1 ("IJ Order"), ECF No. 1-1. He was "to

depart not later than September 1, 2025." IJ Order 1. However, Hai remains detained. Pet. ¶ 13.

He states that his deportation officer has informed him that Immigration and Customs

Enforcement ("ICE") is applying for travel documents on his behalf from China, but, according

to Hai, he has a valid Chinese passport and does not need to apply for travel documents. *See id.*

On April 10, 2026, Hai filed this Petition, challenging his continued detention as

unlawful and seeking his release. *See id.* ¶¶ 13, 15. The Court thus ordered Respondents to

show cause why Hai's application for a writ of habeas corpus should not be granted. Show

Cause Order, ECF No. 4. On May 1, Respondents filed a Response in which they argue that Hai

is lawfully detained until he voluntarily departs the United States to China, pursuant to 8 U.S.C.

§ 1229c and the IJ's order of pre-conclusion voluntary departure under safeguards.  Resp. 3.

Respondents argue that Hai's detention is "finite because he was granted time to voluntarily

depart the United States, and which period may be extended."  Resp. 4.  And that Hai's

continued detention does not violate due process because his detention will only "continue for

the brief time necessary to allow for [his] departure."  *Id.* at 5.

In support of their arguments, Respondents attached the Declaration of Supervisory

Detention and Deportation Officer Gilberto Salazar ("Salazar Decl."), ECF No. 10-4.  According

to Salazar, Enforcement and Removal Operations ("ERO") only has a photocopy of Hai's

Chinese passport, and thus, must request a travel document from China in order for Hai to

voluntarily depart.  Salazar Decl. ¶¶ 5, 7.  Salazar states that Hai alleges that ERO Los Angeles

took his passport during his initial arrest.  *Id.* ¶ 6.  However, according to Salazar, the passport is

not in ERO El Paso nor Hai's possession.  *Id.*  On April 20, ERO Headquarters, Removal and

International Operations ("RIO") notified ERO El Paso that nationality and identification

verification by China "remains pending before the travel document request can be presented to

[the Chinese] Embassy."  *Id.* ¶ 8.

Because Respondents failed to state the specific date on which the nationality and

identification verification request was submitted and the anticipated timeline for verification and

issuance of travel documents, the Court ordered Respondents to file an advisory providing that

information.  May 6, 2026, Order, ECF No. 13.

Respondents have now filed an Advisory, ECF No. 16, to which they attach the

Declaration of Deportation Officer Osbaldo Gonzalez ("Gonzalez Decl."), ECF No. 16-1.

Gonzalez states that the nationality and identification verification for Hai was submitted on

February 6, 2026, and that Enforcement and Removal Operations ("ERO") El Paso has followed

up on this request four times.  Gonzalez Decl. ¶¶ 5–6.  Each time, China has stated that the verification remains pending "and that the process may take several months to complete."  *Id.* ¶ 6.  As for the anticipated timeline to prepare and submit a travel document request to China once verification is received, Gonzalez states that this estimate "is best provided by HQ RIO DDO, who works closely with the Embassy and has a more accurate understanding of the timeframe."  *Id.* ¶ 7.  He does not explain why Respondents did not consult with HQ RIO DDO to obtain an anticipated timeline when the Court expressly requested this information in its May 6, 2026, Order.  *See generally id.*  Gonzlez also states that the anticipated timeline for issuance of the travel document once a request is submitted "is currently determined on a case by case basis by the China consulate."  *Id.* ¶ 8.  Accordingly, "[t]he anticipated timeline for Hai's removal from the country is currently unknown."  *Id.* ¶ 9.

"A voluntary departure becomes final when an immigration judge issues an alternate order of removal, if the individual overstays their voluntary departure period."  *Texas v. United States*, 524 F. Supp. 3d 598, 615 (S.D. Tex. 2021) (cleaned up) (citing 8 C.F.R. § 1241(f)).  In other words, "a final order of voluntary departure converts to an order of removal by operation of law if the alien fails to timely depart in accordance with the order."  *Nasserian v. Ridge*, No. 04-cv-599, 2004 WL 2826823, at *1 n.2 (N.D. Tex. Dec. 8, 2004).  Here, when Hai failed to depart the country on September 1, his order of voluntary departure converted to a final removal order.  *See Texas*, 524 F. Supp. at 615; *accord* IJ Order 1 ("[I]f the Respondent fails to depart as required, the above grant of pre-conclusion voluntary departure shall be withdrawn without further notice or proceedings and the following order, entered pursuant to 8 C.F.R. § 1240.26(d), shall become immediately effective: the Respondents shall be removed to China on the charge(s) set forth in the Notice to Appear.").

At the outset, Respondents appear to ask the Court to deny the Petition under the rule that detained aliens—as opposed to those at liberty—cannot be "held legally liable for not leaving on time pursuant to [their] grant of voluntary departure."  Resp. 5 (citing *Cal-Yuja v. Garland*, 852 F. App'x 139, 140 (5th Cir. 2021) (citation omitted)).  However, the legal liability referred to by the Fifth Circuit in *Cal-Yuja* relates to the penalties associated with failing to voluntarily depart, including the imposition of civil penalties and ineligibility for future immigration relief.  *See Cal-Yuja*, 852 F. App'x at 140 (citing *Matter of Zmijewska*, 24 I. & N. Dec. 87, 94–95 (BIA 2007)).  Not the conversion of a voluntary departure order to a final removal order upon the alien's failure to depart.  Thus, the Court finds that Hai is subject to post-final-removal-order detention and that the constitutional restraints on indefinite detention outlined in *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), apply here.[1]

Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem" the Supreme Court has "read an implicit limitation" into the post-final-removal-order detention statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal.  *Id.* at 689–90.  This period is presumptively six months.  *Id.* at 701.  After the presumptively reasonable period and once the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must rebut this showing or release the noncitizen.  *Id.*

Hai has been detained for over eight months since he failed to voluntarily depart from the country, and his voluntary departure order converted to a final removal order.  *See* IJ Order 1;

---

[1] Indeed, Respondents' argument turns *Cal-Yuja* on its head.  The doctrine described there is meant to protect detained aliens from adverse consequences for circumstances beyond their control.  *Cal-Yuja*, 852 F. App'x at 140.  It would be discordant to apply that authority to prevent the conversion of a voluntary departure into a final order of removal and thus permit indefinite detention.

4

*Texas*, 524 F. Supp. at 615. He appears to have no criminal history and, initially, entered the country legally through a visa, which he overstayed. *See* Resp. 3–4. He alleges that he had a valid Chinese passport with him when he was initially arrested in Los Angeles and that "ERO Los Angeles took his passport during his arrest." *See* Salazar Decl. ¶ 6. Respondents do not contest this allegation. They simply state that "ERO El Paso verified that the passport is not in ERO El Paso's possession, nor within the petitioner's property." *Id.* They do not state whether ERO El Paso verified that the passport is not or was never in ERO Los Angeles' possession. *See generally id.*; Resp.; Advisory; Gonzalez Decl. They provide no inventory of Hai's possessions from either ERO Los Angeles or ERO El Paso, nor do they claim that such inventory was taken. *See generally* Salazar Decl.; Resp.; Advisory; Gonzalez Decl. Based on Respondents' own statements, it would appear that ERO Los Angeles lost Hai's passport.

As a result, in order to remove Hai from the country, Respondents had to obtain a travel document for Hai from China. *See* Gonzalez Decl. ¶ 7. Yet Respondents waited for over five months from the date Hai was required to voluntarily depart to even take the first step in the process for obtaining travel documents. *See id.* ¶ 5. And they provide no explanation for this delay. *See generally id.* Moreover, they offer no expected timeline for nationality and identification verification, let alone issuance of travel documents and removal of Hai from the country. *See generally id.* Although Respondents have been reasonably diligent in following up on the verification request since submitted, they provide that, as of May 3, the request is still pending, and China has continued to indicate "that the process may take several months to complete," despite the fact that the request has already been pending for over three months. *See id.* ¶ 6.

In sum, Hai's detention is neither brief, nor definite—his removal proceedings have concluded, he has been detained for over eight months since his voluntary departure order converted to a removal order, and there is no indication that he will be able to depart for China in the reasonably foreseeable future.  He does not have a valid passport, and there is no timeline for China's nationality and identification verification, which has now been pending for over three months.  Nor, once verified, is there any timeline for the subsequent issuance of travel documents.

Therefore, the Court finds that Hai has carried his initial burden of demonstrating that his removal is not significantly likely to occur in the reasonably foreseeable future, and that Respondents have failed to carry their corresponding burden of showing that it is.  *See Zadvydas*, 533 U.S. at 689–90; *see, e.g.*, *Araya Mogos v. Thompson*, No. 5:26-cv-740-JKP, 2026 WL 475079, at *6 (W.D. Tex. Feb. 13, 2026); *Trejo v. Warden of ERO El Paso East Montana*, --- F. Supp. 3d ----, 2025 WL 2992187, at *5–6 (W.D. Tex. Oct. 24, 2025).

While there is no doubt that Hai is subject to a converted final removal order and was at one time lawfully detained to ensure his removal from country, when Respondents have been extremely dilatory in taking the required actions to facilitate that removal and offer no timeline for its completion, Hai's continued detention is indefinite, and thus prohibited under *Zadvydas*.

Accordingly, the Court **ORDERS** that Respondents shall **RELEASE** Hai from custody, under reasonable conditions of supervision, **by no later than May 22, 2026**.

**IT IS FURTHER ORDERED** that, **on or before May 22, 2026**, Respondents shall **FILE** notice informing the Court whether Hai has been released from custody in compliance with this Order.

**SO ORDERED**.

**SIGNED this 15th day of May, 2026.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE